Kenneth Lenk
3310 South Buckskin Way
Chandler, AZ 85286
(215) 668-8136
ken_lenk@yahoo.com



# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

Kenneth Lenk;

    Plaintiff, *pro se*

    vs.

Semiconductor Component Industries, LLC.

    Defendant

)
)
)
)
)
)
)

Case No.

**C 20 08099**

**COMPLAINT**

JURY TRIAL DEMANDED

DAMAGES EXCEED $75,000

VKD

## COMPLAINT FOR AGE DISCRIMINATION

Plaintiff Kenneth Lenk ("Lenk" or "Plaintiff") brings this action for violations of his civil rights and unfair competitive practices against Defendant as follows:

### NATURE OF THE ACTION

1.   This is an action for civil right violations of the *Age Discrimination in Employment Act (ADEA 29 U.S.C. § 621-634)*, and/or *California's Fair Employment and Housing Act (FEHA) California Gov. Code, § 12940*, and/or *Arizona Statute A.R.S. Sec. 41-1463.*

2.   Defendant Semiconductor Component Industries, LLC, Inc. (hereinafter ON) has violated and continues to violate, has contributed to and continues to contribute to the violation of Plaintiff's civil and other rights guaranteed by federal and state laws.

3.   Defendant's illegal activity violating Plaintiff's rights. Lenk has and continues to suffer damages and irreparable harm.

## JURISDICTION AND VENUE

4.   This Court has jurisdiction over the subject matter and the parties pursuant to *28 U.S.C. § 1331* and *28 U.S.C. § 1343* to redress the unlawful deprivation of Lenk's rights secured, guaranteed and protected by federal law. Federal question jurisdiction arises pursuant to *ADEA (29 U.S.C. § 621-634)*.

5.   This Court has supplemental jurisdiction pursuant to *28 U.S.C. § 1367* for the state law claims so related.

6.   This court has jurisdiction under *28 U.S.C. § 1332* since there is diversity of citizenship and the amount in controversy is greater than $75,000.

7.   Venue is proper under *28 U.S.C. § 1391* since Semiconductor Component Industries, LLC, Inc. does business in this district, since Plaintiff was domiciled in this district during the first illegal act of age discrimination, and since the majority of ON positions Plaintiff applied for are in this district.

## INTRADISTRICT ASSIGNMENT

8.   This action arose from events occurring in the Santa Clara County, California. Therefore, pursuant to local rules it should be assigned to the San Jose of the Northern District of California.

## PARTIES

9.   Plaintiff Kenneth Lenk is an adult male over 40 years old at all times relevant. Lenk was domiciled at 707 Continental Circle, Mountain View, California, 94040 in Santa Clara County until June 2013. Since July 2013, Lenk has been domiciled in Maricopa County and currently resides at 3310 South Buckskin Way, Chandler, Arizona, 85286. At times relevant, Lenk was an applicant, pursuant to *Cal. Code of Regs., title 2, § 11008(a) et al.* for employment at ON.

10.   Defendant Semiconductor Component Industries LLC (ON) is a company incorporated in Delaware (IRS EIN #36-3840979) and is located at 5005 E McDowell Rd, Phoenix, AZ 85008, the company's headquarters location. ON Semiconductor employs over 34,000 people, with over 1,000 working in the U.S. ON has several offices/employment locations in California (Sunnyvale, Santa Clara, etc) to which Plaintiff applied to employment to work at.

11. ON employs greater than 20 employees and is an employer pursuant to The Federal Age Discrimination in Employment Act *(ADEA) - 29 U.S.C. § 630(b)*.

12. ON employs greater than 15 employees in Arizona and is a covered entity/employer pursuant to *A.R.S. Sec. 41-1461*.

13. ON employs greater than 5 employees in California and is an employer pursuant to *California Gov. Code, § 12926(d)* for violations of the *California's FEHA*.

## **FACTUAL BACKGROUND**

14. Early May 2013, Lenk applied for a Business Unit Director - Power Management, position #14944, which he was highly qualified for. Lenk was domiciled in California at this time.

15. Lenk received a response back from ON's Human Resource (HR) Claudia Morgan on May 2, 2013, for a phone interview (scheduled for May 3, 2013 at 12:30 pm).

16. On May 15th, 2013, Morgan scheduled the in person interview (for May 23, 2013). Lenk was requested to complete the on-line application per the link enclosed in Morgan's email.

17. On Lenk's information and belief (that Lenk discovered after June, 2019), the on-line application provided ON with age information which ON then used to discriminate against Lenk.

18. Lenk completed the in-person interview at ON which went typical for this role, bar a few discussions outside normal interview criteria. Some of these discussions focused on after work activities such as biking and running.

19. One conversation, with interviewer Eric Joseph, stood out. This discussion focused on one of Lenk's prior subordinates, R.R. and his retirement party at Freescale (Lenk's former employer). Unknown to Lenk at the time, R.R. was Eric Joseph previous supervisor (as noted in Eric Joseph's LinkedIn account). Also unknown to Lenk at the time, that this was the first indication of ON's age discrimination.

20. On May 24th, 2013, Morgan notified Lenk that he was not selected for the position which was a surprise to him given his background doing the same role at MPS as well as the fact that several of Lenk's prior peers and subordinates work at ON.

21. Lenk requested clarification from Morgan (for the non-selection) given his prior interview success. Morgan stated *"No specific feedback, we have alternate candidates."*

22.   This is a highly unusual response in the semiconductor industry, which is typically direct in its feedback, especially at the senior level. Recruiters are typically comfortable discussing shortcomings, personality issues and/or other faults a candidate may possess.

23.   Lenk continued to press forward and on June 6th, 2013 inquired about a position (via Morgan) for ON Applications Manager, position #14277. Lenk had significant success as an Application Manager at ON's competitor Maxim Integrated Products.

24.   Morgan replied on June 7th, 2013 stating" *"Pretty far along in the hiring process for the Apps Manager. However, I may have something at a slightly higher level in that organization by end of next week. Keep your eye open."*

25.   This was another unusual response. Companies seek the best person for the role, up to the point of job acceptance. Even if ON made an offer to another candidate, there is no guarantee they would accept. Lenk should have been phone interviewed – to see if he was a better candidate or if he should be placed on a backup list. This did not occur.

26.   ON's applicant tracking system (which typically searches on key words in a resume to match to open positions) should have flagged Lenk for this role, back in the beginning of May, 2013 when his application was entered into ON's system. This did not occur.

27.   Lenk had excellent experience as an Application Manager at ON's peer (Maxim Integrated Products) and had interest to work at ON, but was not considered, due to his age.

28.   ON's growth depends on qualified candidates, as noted in their literature. Typical semiconductor company's HR people would have scheduled Lenk for two interviews (during his May 2013 on-site visit) on for the Business Unit Director and one for the Application Manager.

29.   This did not occur; as ON's Human Resource department already flagged Lenk for being too old, per Lenk's completed ON on-line application.

30.   Circa Nov 20, 2013, Morgan contacted Lenk for a Senior Director of MOSFET role (likely to use Lenk's connections to obtain other candidates, which Lenk provided). Lenk responded on Nov 25, 2013 stating he was interested in the role as well.

31.   ON failed to take any additional action in this regard, despite Lenk being highly qualified for the role and being a local candidate.

32.   On Dec 6, 2013, Claudia stated: "*I met with the hiring manager for the Sr Director role that I reached out to you about, and he has decided we are not moving forward. I want to thank you for your interest, and I will continue to think of you for appropriate roles*".

33.   Despite ON's need for qualified candidates, Morgan's promise to keep engaged with Lenk for new opportunities, ON's applicant tracking system which maintains resumes for two years, plus Lenk work experience at ON's competitors and his locality (able to work in the Phoenix without relocation), Lenk never heard of any more positions from ON due to his age.

34.   ON age discriminated against Lenk for the Senior Director of MOSFET role. On information and belief (supported by LinkedIn information) ON hired James Liu, a person whom appears to be at least 10 years younger than Lenk.

35.   Both Lenk and Liu had significantly similar qualifications at ON's competitor at Maxim Integrated Products – as both were Application Managers/Directors there.

36.   Pertaining to the particular requirements for the role, Lenk exceeded Liu in the following skills required by ON -- Market Knowledge/Experience - Experience in marketing management, strategic business planning, and new product development. Intimate knowledge of the following marketing segments, including familiarity with relevant applications and key customers: Computing, Portables, Automotive and Industrial. Outstanding leadership skills, a strong sense of urgency and the drive to succeed in a highly competitive market. Critical thinking skills and the ability to think tactically and strategically. Proven ability to hire and develop marketing talent, on a global basis, including mentoring and developing high potential employees.

37.   Lenk's experience as Director of Strategy and Product Line Manager at Freescale, plus his experience as Director of Product Marketing for Automotive/Industrial at Monolithic Power Systems, Inc. provided him with superior skills over Liu (who have the similar skills as Lenk at Maxim Integrated Products for the Application role there). ON failed to consider any of Lenk's qualifications as they already decided against Lenk due to his age.

38.   Lenk had superior qualification expertise for this Director role and for the May 2013 Business Unit Director -- Power Management role but was not selected due to his age.

39.   On information and belief (supported by LinkedIn information) ON hired Brandi King for the Business Unit Director role, position #14944, a person whom appears to be at least 10 years younger than Lenk, and with significantly less qualifications for the role.

40.   Lenk supplied the Arizona Civil Rights Division (AZCRD) with a comparison of his skills to that of King, indicating his superior skills for the role based on the position criteria. A more thorough comparison will be provided with the information obtained via discovery.

41.   Despite Lenk's superior skills for the role, ON discriminated against Lenk due to his age, a clear violation of federal and state age discrimination laws.

42.   ON failed to provide new positions as suggested by their application tracking system which retains the candidate's resume for two years for matching to new ON opportunities. Given Lenk's similar analog background to ON's career needs (as well as his experience at ON's competitors) it is highly unlikely that there were no matches for his skills during this two year period. This can be validated via discovery.

43.   ON continued discriminating against Lenk in violation of their own policies and law, by not consider him for other positions that he was qualified for, of which ON hired younger and less qualified persons for, of which many were from the same competitors Lenk worked for.

44.   Lenk, interested in regaining employment, and to ensure that he would be a perfect match for the next employment opportunity at ON, utilized the professional services of LinkedIn, a technical career search/matching company.

45.   Lenk found the perfect match for his skills via LinkedIn and then applied to ON for the position he was incredibly well suited for.

**Director of Product Marketing - #1901977**

46.   On May 31, 2019, LinkedIn sent Lenk an email pertaining to a Director of Product Marketing role at ON. LinkedIn stated that Lenk was in the top 10% of 37 applicants and had 10 of the 10 skills required for the Director of Product Marketing – US-AZ-Phoenix, US-ID-Pocatello, US-CA-Sunnyvale, #1901977 position.

47.   This position qualifies as highly specialized given the limited number of experienced candidates that process battery management knowledge, the education requirement and the 15+ years of specialized experience requested by ON in the requirements.

48.   On Sunday, June 2, 2019, Lenk applied on-line via ON's website for the above position. ON confirmed receipt of Lenk's application at 9:49pm.

49.   Approximately 12 hours later, on Monday, June 3, 2019 at 10:21 am, ON stated: *"We have received your application for the position of Director of Product Marketing-1901977. After careful consideration, we regret to inform you that you have not been selected for this position."*

50.   Given normal business working hours, the *"careful consideration"* was less than 2 hours on that Monday morning.

51.   This is an incredibly fast response, especially given the typical Monday morning work loads and typical resume routing times. It is inconsistent with other response times from ON, suggesting that the resume never had any significant reviews and instead was stopped or flagged at the initial filter stage due to Lenk's age.

52.   Lenk had significant industry (and competitor) related experience for the role and was exceptionally qualified for this role based on recent skills. Given that, as well as the extremely limited number of candidates that could meet the requirements, it was amazing that he was not at least, phone interviewed. This is a clear sign that ON was age discriminating against Lenk.

53.   Not only did Lenk believe that he was highly qualified, but so did the professional career matching company, LinkedIn, stating that he had 10 of the 10 required skills and was in the top 10% of 37 candidates.

54.   Clearly a candidate of this skill level would qualify for at least a phone interview, as ON did initially with Lenk for the Business Unit Director for Power Management (#14944) role, though this did occur when ON was unaware of Lenk's age.

55.   Lenk, with significant technical interview experience on both sides of the table, could not understand ON's response and pushed forward. On June 7, 2019 at 2:52pm, Lenk faxed a letter (to ON's HR) explaining his credentials relative to the requirement of the position. Lenk also mailed the same letter (to ON's HR) via USPS mail (**Exhibit A**).

COMPLAINT                                    7

56. Lenk did not hear back from ON and checked on June 10, 2019 about the status, which remained open at that time. Lenk heard nothing more from ON about this position.

57. ON in their position statement (response to Lenk's Arizona civil right charge) stated the position was closed June 11, 2019, four days after Lenk provided a thorough skills comparison to the role requirements. This is highly suspect and is age discrimination.

58. ON's cancellation of this position was done to avoid hiring Lenk, whose fax on June 7, 2019 made it impossible for ON to ignore Lenk's superior qualifications for the role as there was clear documentation of his skills for the role.

59. For semiconductor companies, especially one such as ON whom claims one of their challenges is obtaining proper talent (per their Annual Report) it is highly unusual to *"pull a req"* (removing a posting), especially for difficult to fill positions.

60. Lenk asserts that that this requisition was *"pulled"* since ON did not want to hire an older person for this role. Lenk was 60 years old at that time. ON refused to hire Lenk due to his age.

61. ON's actions are a clear violation of *The Age Discrimination in Employment Act of 1967 - Section 623(a)* which states that "*It shall be unlawful for an employer - (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;*' ON's illegal actions violate state laws as well.

62. ON intentionally removed the position to age discriminate against Lenk, equating to refusal to hire by their intentional removal of the position after Lenk's fact based submission.

63. ON's removed this Director of Product Marketing position three weeks after its initial posting. This is highly inconsistent with similar role postings from ON, of which some remain posted over nine months later.

64. ON later reinstated the requisition (as #1904477) circa April 2020, this time with criteria to specifically exclude Lenk, another violation of *The Age Discrimination in Employment Act of 1967 - Section 623(a)* and other state laws.

65. The need for this function remains, though ON does not want older people (Lenk) to fill it.

**CHIEF OF STAFF - #1901664**

66. On June 14, 2019, Lenk applied via ON's web-site for CHIEF OF STAFF - US-AZ-Phoenix, # 1901664 position. Lenk was completely surprised by the Director of Product Marketing treatment and wanted to see how he would be treated for this position.

67. Lenk was highly qualified for this role based on the requirements ON listed in the requisition. A phone interview did not occur, despite Lenk being qualified for the role based on ON's own criteria.

68. On July 9, 2019, Lenk received the following: *"We have received your application for the position of CHIEF OF STAFF-1901664. After careful consideration, we regret to inform you that you have not been selected for this position."*

69. ON at least presented the appearance of reviewing Lenk's credentials, as this evaluation took over three weeks versus the two hours for the Director of Product Marketing role.

70. On information and belief, ON selected the less qualified and 15 year younger candidate, 45 year old Casey for the position.

71. ON age discriminated against Lenk by not providing him a fair opportunity to compete for the role that he was equally (or better) qualified for.

72. In ON's position statement to the Arizona Civil Right Division, ON claimed that they did not age discriminate since they hired a person over 40 years old for the role.

73. ON illustrates their reckless disregard for governing *ADEA* and state law.

74. By stating such, ON validated Lenk's *ADEA prima facie* claim *(in that ADEA plaintiffs need only show that their replacement was substantially younger to establish a prima facie case)* – per the *EEOC Enforcement Guidance O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308 (1996) standard.* A 15 year difference qualifies as *"substantially younger"* despite the fact that the other candidate is 45 years old.

75. ON provided more favorable treatment to younger 45 year old Casey (when comparing the requirement criteria) than 60 year old Lenk, the exact opposite of the intent of *The Age Discrimination in Employment Act of 1967.*

76.   ON's 45 year old argument in their response/position statement attempts to cover up their age discrimination by suggesting their compliance to the law. Instead, ON acknowledged their ignorance and/or willful misunderstanding of the law and their willful violation of it.

**Senior Manager Applications, Amplifiers & Op Amps - #1901570**

77.   After receiving notice he was not qualified for the Chief of Staff role, Lenk applied for another position that he was over-qualified for, on the same day, July 9, 2019.

78.   This was for the Senior Manager Applications, Amplifiers & Op Amps - US-AZ-Phoenix, #1901570 position.

79.   Despite Lenk's qualifications, ON never requested a phone or in-person interview, due to their age discrimination against Lenk.

80.   Lenk, who is highly (if not over) qualified, should have been considered (or at the very least, phone interviewed) if not for the age discrimination done by ON.

81.   On July 18, 2019, ON stated: *"We have received your application for the position of Senior Manager Applications, Amplifiers & Op Amps-1901570. After careful consideration, we regret to inform you that you have not been selected for this position."*

82.   Surprisingly, this position remained open (nine months later as of April 28, 2020). Now, as before, Lenk was highly qualified for this role as noted per the job requirements stated in the requisition and ON discriminated against him due to his age.

83.   ON's failure to consider a qualified candidate due to age is a clear violation of *The Age Discrimination in Employment Act of 1967 - Section 623 (a) which states that "It shall be unlawful for an employer - (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;'* and other state laws.

84.   Lenk has significant experience at Maxim Integrated Products as Applications Engineer/Applications Engineer Manager, and as Product Definer, and has his experience at ON's sister company Freescale for sensors (which require significant knowledge of amplifiers and op amps) and has experience designing such circuits at Siemens.

85. Lenk was highly qualified for this role. Independent of the companies in Lenk's resume, Lenk can also produce prior job offers (for similar roles) at many of ON's amplifier and op amp competitors (Texas Instruments & Analog Devices are two examples).

86. Lenk, in response to the AZ Civil Rights Division (AZCRD) to ON's position statement, provided a comparison of his skills to that requested for the role, proving that he met/exceeded the job requirements.

87. Lenk was qualified for the role and ON discriminated against him due to age.

88. To further illustrate ON's age discrimination, ON previously hired Lenk's subordinate B.O. as the Product Line Marketing Manager for their amplifier group during 2017-2018.

89. Lenk originally interviewed and hired B.O. at Freescale, and is aware of his age (and work skills). Lenk believes that B.O. is at least 20 years younger than Lenk.

90. Lenk asserts he had better skills for the position applied to, and that ON did not hire him due to his age, and instead selected younger candidates irrelevant of Lenk's better skill match.

**Senior Business Marketing Manager, #1902853**

91. On Sept 9, 2019, Lenk applied for Senior Business Marketing Manager , US-CA-Santa Clara, #1902853 position that he was highly qualified for as it specialized in sensors (a subset of his Sensor Operation Manager role at sister company Freescale).

92. Lenk was again denied for this role, even without a phone interview, per ON's Nov 20, 19 e-mail stating: *"We have received your application for the position of Senior Business Marketing Manager-1902853. After careful consideration, we regret to inform you that you have not been selected for this position."*

93. As with the other roles, Lenk met or exceeded the qualification needs per ON's requirements, but was denied an interview because of his age.

94. In response to the enquiry by the AZCRD, ON stated that they hired Narayanaswamy for the role, a younger candidate as stated in ON's position statement.

95. ON's statement contained Narayanaswamy's resume. A review of his resume (per Lenk's response to AZCRD) suggests he fails to meet the requirement/qualifications as noted in the job posting, especially when compare to Lenk. Based on the resume comparison, Narayanaswamy

did not meet the requirement for the role, though ON hired the younger candidate Narayanaswamy independent of their posted requirements and Lenk's better qualifications.

96.  ON provided favorable treatment to the younger candidate per their own criteria, a direct violation of *The Age Discrimination in Employment Act of 1967* (which does permit favorable treatment of an older person over a younger one, even if both are over 40, not the reverse).

97.  This is a clear age discrimination violation. Narayanaswamy did not meet the requirements, and was provided favorable treatment over older candidate Lenk.

98.  Lenk, on the other hand, was not even considered for the position, due to his age.

99.  Despite ON's refusal to consider Lenk for employment, the age agnostic professional career matching company LinkedIn maintains that Lenk is a good fit for ON per the three recommended positions (at ON) in the LinkedIn screen shot taken on April 30, 2020 (submitted to the AZCRD in Lenk's response).

100. LinkedIn also lists Lenk's peers that work at ON in similar roles to that which Lenk applied for. Since many of Lenk's peers are currently successful at ON, their argument that Lenk lacks skills for the numerous positions applied to is pretext.

101. As noted, B.O. worked under Lenk at Freescale, ON determined that younger candidate B.O. was adequately qualified for a Product Line Manager position though Lenk was not.

102. If ON's sister company Freescale did not provide adequate experience, then surely the combination of Freescale plus Intersil should. Lenk's peer M.J. served at Freescale as Operations Manager and at Intersil as Marketing Manager (the same roles as did Lenk in the same companies at nearly the same times).

103. Upon information and belief (supported by the graduation date listed on his LinkedIn account), M.J., a successful Business Unit Director at ON, is at least 10 years younger than Lenk.

104. ON hired similar skills/background M.J., but excludes Lenk due to his age.

105. Another example is Monolithic Power Systems (MPS), Lenk's prior employer. LinkedIn notes several MPS employees successfully working for ON. One of them is J.W.

106. J.W. was an employee of MPS and was Lenk's Marketing Director peer during 2013. J.W. now works at ON.

107. ON has promoted J.W. at least twice during his employment to his current Sr. Director and General Manager, Computing and Mobile Business Unit role. Lenk on the other hand, can not even obtain a phone interview at ON due to his age.

108. The success of similar situated peers at ON proves that Lenk had adequate qualifications for the roles listed. ON's refusal to consider Lenk for the 2019/2020 positions applied to as well as the prior 2013 positions is age discrimination.

109. ON has hired younger less qualified persons for these and similar roles, while denying Lenk the same opportunity. This is the age discrimination Congress protects via *The Age Discrimination in Employment Act of 1967*.

110. Independent of the disparate treatment of Lenk, ON has demonstrated several examples of disparate impact pertaining to age discrimination.

111. ON's website extensively utilizes photos/pictures of younger ON workers to encourage the employment of such disfavoring older applicants.

112. Lenk provided examples of such photos/pictures in his response to ON's position statement (pertaining to the Arizona Civil Rights Division complaint). (Exhibit B).

113. Plaintiff's concern about ON's age discrimination are reiterated by ON employees (past and present) per the comments on employment feedback website Glassdoor.com.

114. While many comments pertain to retaliation and harassment, there are age related comments such as one from a current intern in Phoenix, AZ:"*...there have been more and more new/younger hires as of late*". This is an independent opinion from ON's own employees suggesting an age disparate impact occurs at ON.

115. Specific to older age discrimination disparate impact, a Phoenix, AZ Program Manager who "*worked at ON Semiconductor full-time for more than 10 years*" stated: "*Stop hiring H1 visas and laying off older people. There were 3.2X more people 50 and over than under 50 laid off by Bill Hall's PSG in Nov 2016*".

116. The above comment about age discrimination can be easily validated via employment statistics obtained at discovery. The comment also suggests that ON uses age discrimination to obtain an unfair competitive advantage by hiring younger and H1 visa applicants.

117. In response to ON's illegal age discrimination, Lenk filed an *Arizona Civil Rights complaint #CRD-2019-0999 (a.k.a. EEOC #35A-2020-00161)* on December 17, 2019.

118. ON provided a position statement (to the AZCRD) via their counsel Ogletree, Deakins, Nash, Smoak & Stewart, P.C. on January 27, 2020.

119. A few weeks later, on February 18, 2020, ON's HR, through their applicant career matching system, sent Lenk an email pertaining to a Principal Supplier Quality Engineer (#2000656) position that matches his profile.

120. This is the first time that the applicant matching system aligned Lenk's skills to an ON position opening, despite LinkedIn's numerous suggested career matches. The timing of this match is highly suspect, as it is shortly after ON's interaction with the AZCRD. Interesting to note is that the applicant matching system failed to provide matches as identified by LinkedIn.

121. ON specifically notes in their application system that: *"Exempting yourself from these clean-up activities will ensure your profile remains active for up to 2 years when you have taken no action on your profile, or until you request to delete your profile by navigating to "My Account Options" and selecting "Deactivate My Account" Candidates in North America are not subject to the 6-month time frame, and will be kept on record for up to 2 years with no activity or until you delete your profile."*

122. ON clearly maintained Lenk's application information per their policy stating such, and used it for the Principal Supplier Quality Engineer (#2000656) position match.

123. This was the first "match" email Lenk received pertaining to new opportunities since his completion of the on-line application back in May 2013 (which ON used to determine his age and discriminate against). Despite numerous positions that Lenk was qualified for, ON's applicant career matching system never decided he was a good fit, at least until the AZCRD started their investigation, in which ON turned off their age filter.

124. It is obvious that ON applicant matching system has flags (age) or other controls for candidate selection can be turned off and on, indicating age disparate intent and treatment.

125. ON removed their age flag after being investigated by the AZCRD as a reaction to Lenk's *CRD-2019-0999 (EEOC #35A-2020-00161)* complaint and corresponding investigation.

126. ON applicant career matching system can quickly match Lenk for viable positions, even ones that Lenk himself does not believe he is qualified for (the Principal Supplier Quality Engineer ON's applicant matching system provided).

127. Lenk reviewed the position requirements and chose not apply, as he was a better match for positions that ON already excluded him for.

128. This February 18, 2020 career *"match"* validates the functionality of ON's on-line applicant career matching system. ON demonstrated that their applicant career matching system works correctly if allowed (age filter removed), even to the point of providing matches for positions that Lenk (or LinkedIn) did not even think that he was qualified as a match for.

129. This same system, if not for the age discrimination would have provided Lenk with numerous career opportunities since his initial on-line application in May, 2013 (including the Application Manager Role denied to him in June 2013) and numerous roles thereafter. Lenk should have had a plethora of career match opportunities if not for ON's age discrimination.

130. Lenk would likely be employed at ON now if not for the age discrimination.

131. As another example, LinkedIn again notified Lenk (via email on September 21, 2020) that he was an excellent match for a Director, Business Marketing – Automotive and that he had 10 of the top 10 skills required for the position.

132. Despite LinkedIn's "match" of ON's Director, Business Marketing – Automotive (a role Lenk was doing at his prior employer) to Lenk, ON's applicant career matching system did not make such as match, even though months prior it was able to match him for a much poorer fit. Lenk's application was still valid (within the past two years); ON's applicant matching system should have emailed Lenk as a valid match, instead it age discriminated.

133. Since LinkedIn believed Lenk was a good match, he applied for the Director, Business Marketing – Automotive position #2002824 in Santa Clara, CA on September 23, 2020.

134. On September 28, 2020 at 1:55pm, ON wrote *"We have received your application for the position of Director, Business Marketing-2002824. After careful consideration, we regret to inform you that you have not been selected for this position."*

135. ,On October 09, 2020, LinkedIn again notified Lenk (via email) that he was an excellent match for a Senior Manager, Applications Engineering in Sunnyvale, CA and that he had 10 of the top 10 skills required for the position (and prior experience as such at ON's competitor, Maxim Integrated Products located in the same city).

136. Again, ON's applicant career matching system did not make such as match, despite Lenk' excellent qualifications for the role, due to his age.

137. It has become obvious that no matter how good Lenk is for a position at ON, that they are not going to hire him due to his age.

138. ON's conduct is despicable. They purposely violate age discrimination laws to favor younger (and cheaper) workers. They purposely advertise their hiring practice which favors younger workers over older ones.

139. Given that Lenk was domiciled in California during the first age discrimination event, and since the majority of positions that Lenk applied for were California based, Lenk filed *DEFH complaint #202010-11491409* (FPO, on October 09, 2020) to the California Department of Employment and Fair Housing (for the California locations age discrimination) and received his right to sue letter. Lenk forwarded the right to sue letter to ON via email to their counsel Ogletree, Deakins, Nash, Smoak & Stewart, P.C (Nonnie Shivers) on October 09, 2020.

140. Lenk offered to discuss settling the age discrimination issue via ON's counsel on record – Nonnie Shivers from Ogletree, Deakins, Nash, Smoak & Stewart, P.C. (as noted in the AZCRD's Respondent Statement) on September 03, 2020 which went unanswered.

141. Lenk provided a DEMAND Letter to the same counsel (and via fax to ON's Human Resource Director) on September 10, 2020.

142. Nonnie Shivers replied on September 22, 2020 (in response to Lenk's enquiry earlier that day) stating: *"...do not yet have a response to your demand, should the company elect to respond."*

143. Lenk offered to settling the age discrimination issue via ON's counsel – Christopher J. Meister from Ogletree, Deakins, Nash, Smoak & Stewart, P.C. on October 31, 2020 which also went unanswered.

144. Lenk provided ON several opportunities to resolve this matter, which they refused.

145. ON is accountable for the destruction of Lenk's career created by their age discrimination and by their unfair competitive practices which discriminates against older workers.

146. Plaintiff requests consideration for ON's illegal activity under the Common-law discovery rule. This doctrine *"read into statutes of limitations in federal-question cases [. . .] in the absence of a contrary directive from Congress."* It *"postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured."* Cada, 920 F.2d at 450. Plaintiff did not discover the age discrimination until ON denied him for a role he had perfect skills match for in June 2019 (and the roles thereafter).

147. Plaintiff also requests consideration since The Ninth Circuit permits a plaintiff to recover for acts outside the limitations period as long as the acts represented an ongoing unlawful employment practice *Anderson v. Reno, 190 F.3d 930, 936 (9th Cir. 1999).*

148. ON's age discrimination against Lenk is clearly an on-going unlawful practice, not only by the individual events already described but also by the continuous age discrimination that occurs via the filtering done in ON's applicant tracking system. ON's system discriminated against Lenk each time a position is excluded, when his skills meet the requirements of the role.

149. Plaintiff asserts equitable estoppel applies (fraudulent concealment) since ON applicant tracking system age discriminates against the candidate without the candidate's knowledge.

150. Plaintiff further argues that equitable tolling applies, since Plaintiff through the exercise of reasonable diligence, could not *"obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant."* Cada, 920 F.2d at 450. Prior to June 2019, Lenk was unable to ascertain ON's age discrimination. ON's denial of Lenk for the Director of Product Marketing role (and roles thereafter) was revealing, as it exposed their true age discrimination motive.

151. ON's illegal actions should also be considered under the continuing violation doctrine as supported by the Supreme Court ruling in *National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002).* The doctrine relieves a plaintiff of a limitations bar if he/she can show a

*series of related acts to him/her, one or more of which falls within the limitations period. Pegram v. Honeywell, Inc., 361 F.3d 272, 279 (5th Cir. 2004).*

152. Consideration under the continuing violation doctrine *"allows courts to consider conduct that would ordinarily be time-barred 'as long' as the untimely incidents represent an ongoing unlawful employment practice.'" Morgan, 232 F.3d 108, 1014 (9th Cir. 2000) (quotation omitted).* Age discrimination is an unlawful employment practice.

153. The continuing violation doctrine requires: *"(1) the defendant's actions inside and outside the limitations period are sufficiently similar in kind; (2) those actions occurred with sufficient frequency; and (3) those actions have not acquired a degree of permanence." Wassmann v. South Orange County Community College Dist. (2018).* ON's age discrimination actions are *"similar in kind"*, and occurred with *"sufficient frequency"*. Plaintiff asserts that they did not *"acquired a degree of permanence"* since ON allowed their applicant system to function properly (without age filtering, February 18, 2020) when under the investigation of the AZCRD.

154. Lenk complied with the EEOC administrate requirements by filing *EEOC complaint 556-2019-00851*, received his right to sue letter, and filed this timely complaint.

155. Lenk complied with the California's DFEH administrate requirements by filing *DFEH complaint 202006-10491123*, received his right to sue letter, and filed this timely complaint.

## FIRST CAUSE OF ACTION

### Age Discrimination in Employment Act (ADEA)

### (29 U.S.C. § 621-634)

156. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

157. Lenk complied with the EEOC administrate requirements and filed *EEOC complaint #35A-2020-00161 (a.k.a CRD-2019-0999)*, received his right to sue letter dated August 25, 2020 and filed this complaint in a timely manner.

158. Lenk is informed and alleges that ON age discriminated against him for employment in violation of *Age Discrimination in Employment Act --ADEA (29 U.S.C. § 621-634).*

159. Despite Lenk's excellent qualifications, his letter of recommendation provided by ON's sister company Freescale, his experience at competitive companies, the fact that his peers and subordinates are successful at ON, they failed to hire Lenk for numerous positions he was well qualified for due to his age.

160. On hired younger and less qualified workers for the positions Lenk applied for, despite that Lenk had better skills for the positions. ON age discriminated against Lenk for these roles.

161. ON age discriminated against Lenk by failing to provide position opportunities for new openings, per age screening via applicant tracking system. On information and belief, this applicant system allows younger workers career opportunities denied to older workers.

162. ON promotes age discrimination via their applicant tracking system, the web, their own lay-offs, internet photographs and other policies, to encourage younger workers to apply at the expense of applicants over age 40.

163. *"The ADEA makes it unlawful for an employer to discriminate against employees on the basis of age. 29 U.S.C. § 623(a)(2). " Heath v. Google LLC, Case No. 15-cv-01824-BLF, 5 (N.D. Cal. Aug. 15, 2019)*

164. Lenk alleges that he has and continues to suffer unemployment because of ON's illegal activity, in violation of the *ADEA* as alleged herein.

165. *The U.S. Supreme Court has held that the ADEA prohibits practices and policies that are seemingly neutral, but have a disproportionately negative impact on older workers (disparate impact), as well as those that explicitly treat older workers less favorably than younger workers (disparate treatment). (See Smith v. City of Jackson, Mississippi, 544 U.S. 228 (2005).)*

166. ON knew and showed reckless disregard for the fact that its illegal conduct was in violation of the *ADEA -- 29 U.S.C. § 623.*

167. As a result of ON's willful and intentional age discrimination, Lenk has suffered and continues to suffer materially adverse harm, including but not limited to loss of career, lost wages/benefits, diminished employment opportunities, humiliation and embarrassment.

168. By reason of ON's illegal age discrimination, Lenk is entitled to all remedies available for violations of the *ADEA*, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### California Fair Employment and Housing Act (FEHA)

### California Gov. Code § 12940

169. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

170. Lenk was domiciled in California when ON initially age discriminated against him. Since then, Lenk applied for numerous positions at ON, the majority which were located in California and hence, subject to California law. California also maintains a strong public policy interest for its technology employees (and their rights therein). Plaintiff asserts that ON's applicant tracking system (which is likely based in Phoenix, AZ) is being used to filter candidates. As a result of these filters, ON's Phoenix location (via their applicant tracking system) is deciding which technology employees are being allowed to be considered for employment in California, a clear violation of public policy and fair competition.

171. Lenk complied with the EEOC administrate requirements and filed *EEOC complaint #35A-2020-00161*, received his right to sue letter dated August 25, 2020.

172. Lenk filed a California Department of Fair Employment and Housing (DFEH) complaint to address the most recent discrimination occurring on September 28, 2020 (for the Director, Business Marketing position in Santa Clara, California).

173. Lenk complied with the DFEH administrate requirements for the California violations and obtained the *DFEH #202010-11491409 'right to sue'* on October 9, 2020 and filed this complaint in a timely manner.

174. Lenk is informed and therefore alleges that ON age discriminated against him in his application for employment in violation of *California Gov. Code § 12940(a)(d)(k)*:

> *(a) **For an employer, because of** the race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, **age**, sexual orientation, or military and veteran status of any person, to **refuse to hire** or employ the person or to refuse to select the person for a training program leading to employment.....*
>
> *(d) **For any employer** or employment agency to print or **circulate** or **cause to** be printed or **circulated any publication**, or to make any nonjob-related inquiry of*

*an employee or applicant, **either verbal or through use of an application form, that expresses, directly or indirectly, any limitation**, specification, or discrimination as to race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, **age**, sexual orientation, or military and veteran status, or any intent to make any such limitation, specification, or discrimination....*

*(k) For an employer, labor organization, employment agency, apprenticeship training program, or any training program leading to employment, to fail to **take all reasonable steps necessary to prevent discrimination and harassment from occurring (emphasis added).***

175. As previously described, ON discriminated against Lenk, in which ON hired significantly younger and less qualified workers instead of Lenk, due to his older age.

176. Lenk asserts that ON uses age information in their applicant tracking system to discriminate against Lenk, as pled.

177. Lenk provided additional information for a position that he was highly qualified for, such that ON could correct their age discrimination activity, but ON failed to *"take all reasonable steps necessary to prevent discrimination"*. Instead, ON took specific steps to further inhibit Lenk from obtaining several positions, indicating their willful intent to discriminate.

178. Lenk alleges that he has and continues to suffer unemployment because of ON's illegal age discrimination, in violation of the *California Gov. Code, § 12940 et seq* as alleged herein.

179. ON knew and showed reckless disregard for the fact that its illegal conduct was in violation of the *California Gov. Code, § 12940 et seq*. Lenk provided ON with numerous opportunities to correct their violation for the June 2019 Director of Product Marketing role position, as well as thereafter with the other positions.

180. ON committed fraud, as their *"careful consideration"* of Lenk for the Director of Product Marketing role was bogus, inaccurate (based on the skills required for the position) and inconsistent with the timing ON used for other positions. ON committed further fraud in their suggestion that there applicant system was fair and just, instead they use the system to age discriminate or filter out resumes favoring younger applicants over those age 40 or older.

181. ON continued their malice and oppression by not considering Lenk for the other roles he was qualified for. ON has and likely continues to hire similarly experienced peers of Lenk, as well as ones with that functioned in competitive companies in similar roles, while ignoring Lenk's similar skills and experience, due to his age.

182. As a result of ON's willful and intentional age discrimination, Lenk has and continues to suffer materially adverse harm, including, but not limited to loss of career, lost wages/benefits, diminished employment opportunities, humiliation and embarrassment.

183. By reason of ON's illegal age discrimination, Lenk is entitled to all remedies available for violations of the *California Gov. Code, § 12940 et seq*, including reasonable attorneys' fees.

184. By reason of ON's conduct done with malice, oppression, and/or fraud, Plaintiff requests exemplary and/or punitive damages as allowed by *California Civil Code § 3294(c).*

### THIRD CAUSE OF ACTION

### Arizona Civil Rights Act – Age Discrimination

### (A.R.S. § 41-1463)

185. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

186. Lenk complied with the Arizona's Civil Rights administrate requirements and filed *complaint # CRD-2019-0999*, received his right to sue letter on August 25, 2020, and filed this complaint in a timely manner.

187. Lenk is informed and alleges that ON age discriminated against him in his application for employment in violation of *A.R.S. § 41-1463(B)(1): (B) It is an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to the individual's compensation, terms, conditions or privileges of employment because of the individual's race, color, religion, sex, age or national origin or on the basis of disability.*

188. On hired younger workers despite Lenk's better skill match for the position requirements.

189. Lenk alleges that he has and continues to suffer unemployment because of ON's illegal activity, in violation of *A.R.S. § 41-1463* as alleged herein.

190. ON knew and showed reckless disregard for the fact that its illegal conduct was in violation of *A.R.S. § 41-1463*, as evident by their admissions in their response to the AZCRD.

191. As a result of ON's willful and intentional age discrimination, Lenk has suffered and continues to suffer materially adverse harm, including but not limited to loss of career, lost wages/benefits, diminished employment opportunities, humiliation and embarrassment.

192. By reason of ON's illegal age discrimination, Lenk is entitled to all remedies available for violations of *A.R.S. § 41-1463*, including reasonable attorneys' fees.

## **FOURTH CAUSE OF ACTION**

CALIFORNIA UNFAIR COMPETITION LAW (UCL) VIOLATION

*Business & Professional Code § 17200*

193. Lenk re-alleges all the paragraphs of this Complaint as if fully set forth herein.

194. California Courts have determined that age discrimination provides an unfair competitive advantage and hence violates the *Cal. Bus & Prof Code § 17200 Herr v. Nestle U.S.A., Inc., 109 Cal. App. 4th 779, 789-90 (2003)* (since older workers salaries are higher than younger workers).

195. Lenk asserts that ON favors younger workers over older workers to gain an unfair competitive advantage. This is unfair competition. ON also appears to favor lower cost H1 visa workers over traditional employees to obtain further unfair competitive advantages.

196. ON's actions interfere with fair market competition and are anti-competitive:

> *"Defendants' anticompetitive conduct also violates California's UCL. California Business & Professions Code § 17200 prohibits an individual or entity from engaging in an "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000)*

197. ON's age discrimination of Lenk was done for their own financial gain and is unfair competition as defined by *Cal. Bus & Prof Code § 17200*:

> *"As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."*

198. Lenk is *"a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"* *Cal. Bus & Prof Code § 17204* and hence has standing per the requirements of *Section 17204* and complies with *Section 382* of the Code of Civil Procedure. Lenk would have been employed if not for ON's unfair competition.

199. Lenk has an *"ownership interest"* in the unpaid wages he would have obtained if not for ON's *unlawful, unfair or fraudulent business act* and seeks restitutionary relief. *Cortez v. Purolator Air Filter Prods., 23 Cal. 4th. 163 (2000)*

200. Lenk requests injunctive, restitutionary, and other relief pursuant to *Cal. Bus & Prof Code § 17203* to *"restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.'*

201. As a result of ON's conduct alleged herein, of their willful and intentional unfair competitive practices, Lenk has suffered and continues to suffer materially adverse harm, including loss of career, lost wages / benefits, diminished employment opportunities, humiliation, emotional pain, suffering,  mental anguish, and loss of enjoyment of life.

202. Lenk requests costs and attorney's fees as allowed by *Cal. Civ. Code § 1021.5.*

### **JURY DEMAND**

203. Pursuant to *FRCP 38,* Lenk demands trial by jury on all issues raised in this complaint.

### **PRAYER FOR RELIEF**

204. WHEREFORE, Plaintiff respectfully prays for:

205. Compensation for all injury and damages suffered by Lenk, including, but not limited to, both economic and non-economic damages, in an amount proven at trial including back pay, front pay, pre/post judgment interest, lost benefits of employment, adverse tax consequences, investment loss, liquidated damages under federal, California and Arizona law for willful

violations, exemplary damages, and general damages relating to emotional distress and mental anguish damages as provided by law.

206. Plaintiff's reasonable attorneys' fees, expert fees, and costs, as provided by law, as well as the private attorney general theory of recovery of reasonable attorneys' fees and costs in employment related cases.

207. Exemplary and/or punitive damages as allowed by California Civil Code § 3294;

208. Order ON to eradicate the effects of their unlawful practices;

209. Grant such other and further relief as the Court may deem just and proper.

DATED this 11th day of November, 2020

/s/ Kenneth Lenk
Kenneth Lenk, pro se
3310 South Buckskin Way
Chandler, AZ 85286
(215) 668-8136
ken_lenk@yahoo.com